MERCEDES MALDONADO WIDOW OF MALDONADO ET AL., Plaintiffs and Appellants, *v.* ARTURO (TUTO) MÉNDEZ, and EL MUNDO, INC., Defendants and Appellees.

No. R-62-129.     Decided May 2, 1963.

A. *Viera Martínez* for appellants. *Rivera Zayas, Rivera Cestero & Rúa* for El Mundo, Inc.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Antonio Maldonado Maldonado died as a result of an aviation accident which occurred on August 7, 1955 in the bay of San Juan. His mother and two sisters filed a claim for damages against Arturo Méndez and El Mundo, Inc., alleging that the accident was due exclusively to defendants' negligence. We have under consideration the appeal taken by plaintiffs from the judgment of the San Juan Part of the Superior Court dismissing the complaint.

At a pretrial conference plaintiffs stated their theory that they were not bound to prove any negligent act because Antonio Maldonado was at the time of the accident an employee

of defendants and the latter were his employers. Plaintiffs further alleged at the conference that defendants were negligent because they had carried cargo on a plane other than a cargo plane and because it was overloaded.

On the labor-management relationship, the trial court made the following findings of fact:

"On August 7, 1955 defendant Arturo Méndez was the owner of a Stinson Model V-77 plane which was registered under No. U.S.-N69391 and which he used that day to comply with a contract for the transportation of newspapers which he had undertaken as independent contractor with codefendant El Mundo, Inc. This contract was entered into by way of experiment, and in order to perform that function Arturo Méndez was using as employee pilot Jaime Rivera, although on other occasions he had also used pilots Mike Fernández and Plácido Díaz. . . . Antonio Maldonado Maldonado was not an employee of Arturo Méndez, but he requested permission from the latter to perform certain practices together with Jaime Rivera to which they referred as 'checking themselves,' and on several occasions, at his own request, Maldonado received some money from Méndez to help him with his transportation expenses from the airport. By that time Maldonado was already a pilot and made a certain trip with West Indies Airways, for which he received some compensation. At that same time Arturo Méndez owned a garage for repairing automobiles, and neither he nor El Mundo, Inc. had taken out policies with the State Insurance Fund covering the operation of transporting the newspapers in the Stinson plane. . . . El Mundo, Inc. had no control over Méndez' plane or over Méndez' employee. El Mundo, Inc. merely delivered the papers to Méndez and paid him a certain amount which ranged from $35 to $40 per trip."

After finding that the accident was due to a pilot error of Maldonado himself who was at that moment piloting the plane, rather than to overloading or to any other negligent act imputable to defendants, the trial court concluded that § 1802 of the Civil Code was applicable and dismissed the complaint.

In this appeal plaintiffs-appellants maintain that the trial court erred: (1) in holding that their action is governed by § 1802 of the Civil Code, the evidence having established that this was a special action of damages resulting from a labor accident against uninsured employers, under § 15 of the Workmen's Accident Compensation Act; (2) in concluding that Antonio Maldonado was not an employee of Arturo Méndez; and (3) in concluding that the proximate cause of the accident was due to negligence, carelessness or lack of skill or experience on the part of Maldonado himself, and that the accident was not due to overloading.

It appears from the record, and the trial court so concluded, that in connection with pilot Jaime Rivera, who lost his life in the same accident, proceedings were had before the State Insurance Fund and the Industrial Commission, as a result of which the Commission held on July 5, 1956 that Arturo Méndez was an uninsured employer of Jaime Rivera and ordered the Manager to determine proper compensation as a labor accident, payable by the employer Arturo Méndez, defendant herein, to Rivera's beneficiaries, as provided by law. On November 20, 1956 this Court refused to review that decision. It also appears from the record before the Industrial Commission (plaintiffs' Exh. 5) that the beneficiaries of Jaime Rivera subsequently appeared before the Commission and urged that El Mundo, Inc., be obligated to pay, independently of Arturo Méndez, the compensation determined by the Fund, which petition was predicated on the theory that El Mundo should be deemed to be in that case an employer who was using the services of an uninsured independent contractor, and that for that reason that enterprise was liable with its own insurance. The Industrial Commission held that the petition did not lie and denied the same on April 30, 1957.

■ Appellants have not sent up the transcript of the oral evidence. We have no basis to hold that the trial court's

conclusion that Antonio Maldonado was not an employee of Arturo Méndez nor of El Mundo is incorrect. From certain documentary evidence sent up it cannot be said that said conclusion is unsupported by the record or that it is wholly untenable.

The same situation exists as to the trial court's conclusions on the occurrence of the accident and the cause thereof. The court determined in this connection:

"Méndez received the newspapers from the hands of employees of El Mundo and helped to load them. When the plane took off Maldonado was at the control and Méndez then told pilot Rivera not to let Maldonado pilot the plane, to which he answered that he knew what he was doing. Méndez' Stinson plane could carry passengers as well as cargo. There is no regulation or impediment why a plane can not be devoted to transport passengers or cargo as well. Méndez had control of the plane as owner through his employee, Capt. Jaime Rivera, who was the one who decided whether or not the plane could depart or land or take off.

"Notwithstanding Méndez' admonition, about 4 p.m. of August 7, 1955, the Stinson plane, piloted by Antonio Maldonado Maldonado and the Captain or pilot Jaime Rivera Cardona sitting by his side, glided to the take-off position, namely, toward the northern runway of the field and then in an easterly direction. The control tower gave the signal to take off on runway 27 and the direction and velocity of the wind as SSW-14. At 4:17 the control tower gave the signal for the plane to take off. The plane was ready to take off in an easterly-westerly direction on a runway of some 4,000 feet. The flaps, or air brakes, were in a downward or extended position. The plane took off after a relatively short run and when it passed in front of the tower the estimated altitude was 40 to 200 feet before reaching the end of the runway, but after it took off it was noticed that the pilot retracted or closed down the flaps, the position of the plane at that moment being nose high. About 1,000 feet after leaving the field and while it was already flying high, the plane swerved to the right, lost altitude and nose-dived into the water, Antonio Maldonado Maldonado as well Jaime Rivera Cardona having lost their lives in this accident.

"The above-described accident was not due to overload, since the plane, according to the expert evidence believed by the court, could rise perfectly well and if it had been overloaded, it would have been limited, could not have risen on such a short stretch of the runway which it covered before taking off.

"The accident was due to a pilot error of Antonio Maldonado Maldonado in closing down the flaps at an altitude of 100 to 200 feet, since according to good technique and correct piloting the plane should proceed with the flaps on until it reached an altitude of 500 or 600 feet. In addition to this pilot error, another error was committed consisting also in closing down the flaps when the position of the plane was nose high, since the technique cautions, according to the expert testimony believed by the court, that before closing down the flaps it was necessary to lower the plane nose and speed up horizontally.

"When pilot Maldonado realized the dangerous position which he himself had created by closing down the flaps of the plane, instead of swerving to the left, that is, against the wind which at that moment was blowing south-southeast, he swerved to the right in the same direction as the wind which, as already stated, was blowing south-southeast, and as he started to swerve to the right the plane lost altitude and nose-dived into the water."

On the basis of the foregoing, the court determined as a matter of law that the accident was due exclusively to Antonio Maldonado's negligence and inexpertness. We do not have the transcript of the oral evidence and are in no position to decide either whether the foregoing conclusions are erroneous. From the documentary evidence sent up we may say that they are not entirely without basis. From a report of the accident signed by E. M. Mundy, Aviation Safety Advisor (plaintiffs' Exh. 12), it appears that the plane in question could carry a maximum cargo of 4,000 pounds, its empty weight was 2,554.75, so that it could carry a load of 1,445.25 pounds. The newspapers weighed 1,182 pounds. The weight of the pilots does not appear affirmatively. It is said in the report that the plane had a certificate of good flying condition. On the basis of the whole evidence, the trial court concluded that the accident was not due to overloading.

■ The only question for decision is the question of law to the effect that it was error to apply § 1802 of the Civil Code in deciding the case. Section 15 of the Workmen's Accident Compensation Act, No. 45 of 1935 (Sess. Laws, p. 250), provided at the time of the occurrence that in case of an accident to a workman or employee while working for an employer who, in violation of law, is not insured, the Manager shall determine the compensation and the Secretary of the Treasury shall collect from the employer. If an employer who employs three or more workmen or employees failed to take out insurance in pursuance of the Act, any prejudiced workman or employee, or his beneficiaries, could proceed against such employer by filing a petition for compensation with the Industrial Commission, and could also bring suit for damages against the employer just as if the Act were not applicable. The action had to be brought by verified complaint, and it was provided that in such proceeding the fact that the workman or employee was guilty of contributory negligence, or had assumed the risk of the injury, or that the injury was caused by the negligence of an independent contractor or subcontractor, would constitute no defense for the employer unless such independent contractor or subcontractor was insured in accordance with the provisions of the Act.

On the other hand, § 16 of the Act has provided that in all cases of disease, injury or death occurring to workmen or employees not subject to its provisions, the employer's liability shall be the same as if the Act did not exist, regardless of any action which the prejudiced workman or employee may have in accordance with the provisions of § 1802 of the Civil Code.

Section 15 as well as section 16 is based on a labor-management relationship. In the first it is necessary to be a workman or employee, but the employer has failed to comply with his obligation to insure. Not only is he awarded

in that case the compensation provided by Act No. 45, but he may file a regular action for damages against the employer, *cf. Rivera* v. *Industrial Commission,* 67 P.R.R. 526 (1947); *Castro* v. *Marrero,* 54 P.R.R. 189, 194 (1939), although with the condition or limitation that the employer shall not be allowed to set up the defense that the workman was negligent or assumed the risk. *Cf. Bonilla* v. *Mitchel,* 51 P.R.R. 123, 129 (1937). This limitation of defense is intended to act as a restraint so as not to defeat the general philosophy of the statute as to negligence for failure to insure. Section 16 is likewise based on the labor-management relationship, except that the workman is not among those comprised in the Workmen's Accident Compensation Act. Hence, the need for holding the employer liable as if the Act did not exist, irrespective of the Aquilian fault accruing under § 1802 of the Civil Code to any person who sustains damages.[1]

■ The record does not show that the Manager of the Insurance Fund or the Industrial Commission made any pronouncement in the sense that at the time of the accident Antonio Maldonado was an employee of Arturo Méndez, who was adjudged uninsured employer in the same accident as to the other pilot Jaime Rivera. Apparently no proceedings involving labor-management relationship were had before those agencies. Under such circumstances, the trial court had authority to make pronouncements on the existence or non-existence of a labor-management relationship between Maldonado and Méndez and El Mundo, Inc. *Cf. López* v. *García,* 86 P.R.R. 666 (1962) (footnote 2). Had there been a pronouncement to that effect, either by the Industrial Commis-

---

[1] The Act of March 1, 1902 holds an employer liable for the damages suffered by a workman or employee as a result of defects in the apparatuses used in connection with the employer's enterprise, or in the enterprise if the employer is negligent in failing to discover or remedy such defects, or as a result of the negligence of any person in the employer's service in charge of the management. This Act, unlike § 15 of Act No. 45, requires the employee to exercise due care and diligence in his occupation.

sion or by the trial court itself, appellants would be right in maintaining that the situation should be governed by the provisions of § 15 copied above, and Maldonado's negligence and any other risk assumed by him would constitute no defense for defendants. The trial court concluded on the evidence which it had under consideration that Maldonado was not an employee of Méndez nor of El Mundo and there is no basis for disturbing this determination. Consequently, this case is not governed by the Workmen's Accident Compensation Act and Maldonado's beneficiaries were bound to establish that defendants were negligent, *Rivera* v. *Industrial Commission, supra*; nor were defendants precluded from setting up the defense that Maldonado was negligent.

The foregoing does not necessarily mean that defendants would in any event be exempt from liability. If by some act or omission they were at fault or negligent, either directly (§ 1802) or through their agents or employees (§ 1803), they would be liable for the damage. The facts, as concluded by the trial court, do not establish such liability. Although pilot Rivera, as employee of defendant Méndez, permitted Maldonado aboard the plane and to pilot it, the documentary evidence shows that he had authority as pilot to do so and that he had a certificate of good physical flying condition. The expert evidence, as weighed by the court, tended to show that the accident was not due to overload or to any hazardous condition of the plane. It was conclusively established that the plane was in good flying condition. Neither Méndez, nor his employee, nor El Mundo performed any negligent or culpable act or omission which caused the plane to fall and the death of Maldonado and Rivera.

The judgment dismissing the complaint will be affirmed.